645 P.2d 1262

Ford VALENCIA, a single man, Plaintiff/Appellant,

v.

DUVAL CORPORATION; Christopher G. Janes, both in his individual capacity and as an agent or servant acting on behalf of Duval Corporation, and Elizabeth Janes, his wife; Rhoda Burger, both in her individual capacity and as an agent or servant acting on behalf of Duval Corporation; The Tucson Clinic, P. C., a professional corporation; Delmer J. Heim, M.D., both in his individual capacity and as an agent or servant acting on behalf of the Tucson Clinic, and Mildred Heim, his wife, Defendants/Appellees.

No. 2 CA–CIV 4163.

Court of Appeals of Arizona, Division 2.

March 30, 1982.

Rehearing Denied April 28, 1982.

Richard Parrish, Tucson, for plaintiff/appellant.

Bilby, Shoenhair, Warnock & Dolph, P. C. by Lina S. Rodriguez, Tucson, for defendants/appellees Duval Corp., Janes and Burger.

Chandler, Tullar, Udall & Redhair by John E. Osborne, Tucson, for defendants/appellees Tucson Clinic and Heim, M.D.

## OPINION

HATHAWAY, Judge.

Appellant is a former employee of Duval Corporation. In this appeal, he seeks review of a summary judgment in favor of all defendants on his invasion of privacy claim resulting from the termination of his employment by Duval. We agree with the summary disposition of appellant's claim and affirm.

In 1979, appellant requested a leave of absence from Duval because of a claimed personal disability, valley fever. Because of a positive reaction to a valley fever skin test, his personal physician had recommended that he not work for several weeks. Appellant, however, had not disclosed to his doctor that he had had valley fever in 1976. When Ms. Burger, Duval's personnel relations supervisor, reviewed appellant's request for a leave of absence, she discovered the 1976 leave for valley fever. She also noted that the doctor's note supporting the current leave request was dated two weeks earlier. She thereupon telephoned Dr. Heim at Tucson Clinic. Dr. Heim was the company-designated physician for pre-employment physical examinations, return-to-work releases and any medical advice that Duval needed from him.

Ms. Burger asked Dr. Heim whether it was reasonable for a person who was diagnosed as having valley fever to wait two weeks to take a leave of absence and whether it was reasonable that an individual would have valley fever twice. He responded to both questions in the negative. Ms. Burger identified appellant as the employee she was concerned about and Dr. Aguilar, who also practiced at Tucson Clinic, as his physician. Dr. Heim volunteered to speak to Dr. Aguilar about appellant's condition. Dr. Heim told Dr. Aguilar that appellant was an employee of Duval and that Duval had inquired regarding the valley fever condition. He asked whether Dr. Aguilar knew that appellant had previously had a positive skin test for valley fever. Dr. Aguilar indicated that he did not. He also showed Dr. Heim the results of a stress test given appellant. In response to Dr. Heim's inquiry, Dr. Aguilar indicated that appellant could return to work. Dr. Heim relayed this information to Ms. Burger and told her that he and Dr. Aguilar agreed that appellant could return to work.

**350**

Appellant returned to work. In response to a letter written by him to Ms. Burger, complaining of her conduct in contacting Dr. Heim, appellant was called into a meeting with his supervisor and Ms. Burger. He told them that he was still suffering from valley fever and they asked him to provide medical verification. Duval afforded him ample opportunity to procure the verification. When he failed to do so, he was fired.

Appellant received certain insurance and work benefits as a Duval employee which were set forth in a booklet furnished to him. As to short-term disabilities, the booklet specifically indicated, as follows, that proof of disability might be required:

> "The Company may request medical verification by a physician at the beginning or during your illness or injury."

■ In this state, we have recognized that a claim for relief may exist for invasion of the right of privacy based upon an intrusion into the plaintiff's seclusion, solitude or private affairs. However, in order to maintain such a claim for relief, the defendant's conduct must meet the test necessary to state a claim for intentional infliction of emotional distress, i.e., extreme and outrageous conduct. *Davis v. First National Bank of Arizona*, 124 Ariz. 458, 605 P.2d 37 (App.1979); *Cluff v. Farmers Insurance Exchange*, 10 Ariz.App. 560, 460 P.2d 666 (1969).

■ The trial court properly concluded that neither Dr. Heim's nor Ms. Burger's conduct was extreme and outrageous. In other words, their actions were not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts, § 46, comment d. When appellant requested a leave of absence based on illness, he knew that medical verification would be required. That he had a bout with valley fever in 1976 was a matter that he himself disclosed when he obtained sick leave for such illness. Dr. Heim's conduct in relaying

this information as to the 1976 illness to appellant's personal physician was intended to be helpful by eliminating the valley fever diagnosis. Even if there were a physician-patient relationship between appellant and Dr. Heim, there was no violation of it since no confidential medical facts were disclosed that were not already known.

Appellant's reliance on *Horne v. Patton*, 291 Ala. 701, 287 So.2d 824 (1973), and *Hammonds v. Aetna Casualty & Surety Company*, 243 F.Supp. 793 (N.D.Ohio, E.D. 1965), is misplaced. Those cases recognize that a patient may have an invasion of privacy claim against a doctor who discloses information, relating to the patient's health and which the doctor has received in a confidential capacity, without the patient's consent. Also *see*, Annot., 20 A.L.R.3d 1109. There was no such information disclosed here. The only information was that which already appeared in his employment record and which had not been disclosed to his personal physician.

Affirmed.

HOWARD, C. J., and BIRDSALL, J., concur.