714 P.2d 887

**SAMARITAN HEALTH SERVICES, an Arizona corporation, Plaintiff-Appellant, Cross-Appellee,**

v.

**CITY OF GLENDALE, a political subdivision of the State of Arizona; State of Arizona Department of Public Safety, Defendants-Appellees, Cross-Appellants.**

**No. 1 CA–CIV 7470.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 6, 1986.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P.A. by Franzula M. Bacher and Larry L. Smith, Phoenix, for plaintiff-appellant, cross-appellee.

Peter A. Van Haren, Glendale City Atty. by Richard A. Stewart, Asst. City Atty., Glendale, for defendant-appellee, cross-appellant City of Glendale.

Robert K. Corbin, Atty. Gen. by Samuel Ruiz, Asst. Atty. Gen., Phoenix, for defendant-appellee, cross-appellant State of Arizona.

1. A.R.S. §§ 12–1831 through 12–1846.

HAIRE, Judge.

This is an appeal from summary judgment entered in favor of appellees, City of Glendale (Glendale) and the Department of Public Safety (DPS). Samaritan Health Services (Samaritan) filed a declaratory judgment action alleging that in the past appellees had used search warrants for the purpose of seizing patients' medical records from Samaritan, and that it was reasonably probable appellees would continue to do so in the future. Samaritan sought relief from the continued use of search warrants without a determination of whether the medical records to be seized were subject to the physician-patient privilege, alleging that such seizures violated the fourth amendment. Appellees asserted that there was no justiciable controversy for the purposes of the declaratory judgments act,[1] and also denied that search warrants for hospital records violated the fourth amendment. In granting summary judgment for the appellees, the trial court held that Samaritan had standing, and that the use of search warrants for the seizure of medical records of Samaritan's patients was not unconstitutional.

The first issue presented on appeal is whether the trial judge erred in holding that Samaritan had standing to attack the validity of the search warrants in a declaratory judgment action. In urging that there was no justiciable controversy, Glendale argued that none of *Samaritan's* rights were affected by any of Glendale's actions. DPS argued that there was no presently existing set of facts to justify a declaratory judgment and hence any declaration would be merely advisory. Neither argument is persuasive.

In order for there to be a justiciable controversy for the purposes of the declaratory judgment act there must be an assertion of a right, status or legal relation in which the plaintiff has a definite interest and a denial of it by the opposing party. *Morris v. Fleming*, 128 Ariz. 271, 625 P.2d 334 (App.1981). In the present case, Sa-

maritan has a definite interest in determining its legal duties when served with a search warrant relating to its patients' medical records. In circumstances not involving a search warrant, it has been held in Arizona that a hospital has the duty to assert the physician-patient privilege when neither the physician nor patient is present. *Tucson Medical Center, Inc. v. Rowles*, 21 Ariz.App. 424, 520 P.2d 518 (1974). Samaritan is thus concerned that it may have the duty to assert the privilege when served with a search warrant, and that its failure to do so might expose it to civil liability. *See Valencia v. Duval Corp.*, 132 Ariz. 348, 645 P.2d 1262 (App.1982). Since there are no statutory provisions which would allow Samaritan to immediately assert the privilege in response to the service of a search warrant, Samaritan urges that it is entitled to guidance as to its duties under such circumstances.[2] Glendale and DPS contend that when served with a search warrant, Samaritan has no duty but to comply with the search warrant. This argument by appellees assumes the resolution in appellees' favor of the very issue upon which Samaritan bases its request for declaratory relief. On the facts and the assertions and denials in the record before us, we find that a justiciable controversy exists.

■ Samaritan's primary contention is that in the absence of a procedure which would allow the determination of the privilege claim in advance of the seizure of its records, the use of search warrants to obtain Samaritan's medical records which may contain information subject to the physician-patient privilege violates the fourth amendment prohibition against unreasonable searches and seizures. We do not find it necessary to reach this issue since we conclude that Samaritan is not required to assert the physician-patient privilege when served with a search warrant for medical records.

Arizona has adopted physician-patient privilege statutes for both civil and criminal proceedings. *See* A.R.S. § 12–2235, and A.R.S. § 13–4062(4). In *Tucson Medical Center, Inc. v. Rowles, supra*, through the use of a subpoena *duces tecum*, Rowles attempted to obtain from the hospital the files of a patient who was not a party to the negligence action against the hospital. The court first held that information contained in the hospital files was subject to the physician-patient privilege. In response to the contention that the hospital had no standing to assert the privilege on behalf of the patient, the court held that the hospital had standing *and was required* to assert the privilege when neither the physician nor the patient was present.

In *State v. Santeyan*, 136 Ariz. 108, 664 P.2d 652 (1983), Santeyan had been convicted of two counts of negligent homicide and one count of possession of a narcotic. The state had proved some of the elements of negligent homicide by using the results of urinalysis tests. Those tests were taken at a hospital as a part of Santeyan's treatment and not at the request of the police or prosecutor. With those facts before it, the Arizona Supreme Court considered the applicability of the criminal physician-patient privilege statute. The court noted that by judicial interpretation the civil statutory privilege was not limited to oral communications, having "been held to protect from disclosure hospital records containing information obtained from examination or testing of a patient." *Id.* at 110, 664 P.2d at 654. The court reasoned that since the language of the civil and criminal privilege statutes was not significantly different, the criminal statute should be interpreted the same as the civil statute.

From these cases Samaritan argues that judicial decisions have imposed on it a duty to assert the physician-patient privilege in any situation where hospital medical

---

**2.** Appellees urge that the hearing provided by A.R.S. § 13–3922 for controverting the grounds for the issuance of a search warrant gives ample opportunity to Samaritan to assert and litigate the privilege issue. It is questionable whether the issues raised here could be adjudicated in a controverting hearing. Arizona case law suggests that the scope of controverting hearings is limited. *See Mehrens v. State,* 138 Ariz. 458, 675 P.2d 718 (App.1983). In any event, whether Samaritan could raise privilege issues at a controverting hearing is irrelevant because at that point the seizure and consequent disclosure to third parties would have already occurred.

records are sought when neither the physician nor patient is present. We do not agree. *Rowles, supra,* dealt with whether a hospital was required to assert the physician-patient privilege when faced with a subpoena *duces tecum* when neither the physician nor patient was present. In *Santeyan, supra,* the supreme court did not extend the duty to assert the physician-patient privilege to all situations but merely noted that since the civil and criminal statutes were not significantly different in their wording, the privilege afforded by the criminal statute should be held to be as broad as that afforded by the civil statute.

These cases do not extend the hospital's duty to assert the statutory privilege to situations where a search warrant is executed for patient records, and, in the absence of an appropriate statutory procedure, it is our opinion that the hospital's duty should not be further extended.

The issue raised in this case exemplifies the conflict between the need of the state to use search warrants for criminal investigations and the state's statutorily enacted policy of furnishing protection for confidential information acquired in the physician-patient relationship.

It is true that the legislature and courts have placed considerable emphasis on the physician-patient privilege. The physician-patient privilege statutes and the cases cited above evidence a clear intent to protect information obtained in the physician-patient relationship from disclosure to third parties. We note, however, that numerous inroads have been made on the privilege. The legislature has enacted several statutes that require physicians and others to disclose certain information obtained during the physician-patient relationship to third parties. Physicians must report: gunshot and knife wounds which may have resulted from illegal activity to the police, A.R.S. § 13–3806; contagious or infectious diseases to the health department, A.R.S. § 36–621; and non-accidental injuries to or evidence of physical neglect of minors to the police or the Department of Economic Security, A.R.S. § 13–3620. These enactments indicate that the legislature has found certain societal interests sufficiently important to override the state's general interest in protecting confidential patient information from disclosure to third parties. We note that at the present time there is no statutory procedure by which Samaritan could assert the privilege prior to the seizure of the records pursuant to a search warrant.

Accordingly, we conclude that Samaritan has no duty to assert the physician-patient privilege when served with a search warrant relating to its patients' medical records. If the legislature in balancing and weighing the conflicting policy considerations involved determines that the hospital should be required to assert the privilege when served with a search warrant, it may enact legislation to that effect along with appropriate procedural provisions to accomplish that result.[3]

Since Samaritan has no duty to assert the statutory privilege when faced with a search warrant, we find no impropriety on Samaritan's part when its employees help in the location of items specified in the search warrant. To hold otherwise would result in the needless exposure to the executing officer of other hospital records during the process of the search.

Samaritan makes the additional argument that certain federal statutes and the rules promulgated under them prevent disclosure of medical records of certain patients.[4] We do not consider this argument because it has not been shown that Samaritan is involved in any of the programs to which the statutes and rules would apply.

The judgment entered by the superior court is affirmed.

GREER, P.J., and BROOKS, J., concur.

---

**3.** *See, e.g.,* Cal. Penal Code § 1524 (West 1982).

**4.** *See* 21 U.S.C. § 1175 (1976); 42 U.S.C. § 290ee–3 (Supp. I 1983); 42 C.F.R. § 2 (1985).